## M'Lanahan *against* Reeside.

The registry of a mortgage, by which creditors are to be affected, whatever be the form of the transaction betwixt the parties, must exhibit it as a whole, connected and perfect in its parts. Hence, an agreement between the vendor and vendee, executed on the same day with a deed of conveyance in fee, and recorded at the same time, that the purchase-money shall continue to be a lien on the land, will not constitute such a mortgage as to give a preference to the vendor, in regard to lien, over subsequent judgment creditors of the vendee; and this without reference to the act of 1830, in relation to the lien of mortgages.

ERROR to the common pleas of *Bedford* county.

William A. M'Lanahan & Co. against James Reeside. Amicable action and case stated to try whether the plaintiffs and others are entitled to the proceeds of the sale of the real estate of William Lewis, to the amount of their judgments respectively, in preference to James Reeside, who claims to hold a lien, in the nature of a mortgage, against said real estate, upon the following statement of facts, to be considered in the nature of a special verdict.

On the 9th of February 1835, the following agreement was entered into between the said James Reeside and the said William Lewis.

"Articles of agreement entered into this 9th day of February 1835, by and between James Reeside, 'of the city of Philadelphia, and state of Pennsylvania, of the one part, and William Lewis, of the borough of Bedford, and state aforesaid, of the other part, witnesseth: that the said James Reeside hereby agrees to sell and convey, and by these presents doth hereby sell and convey unto the said William Lewis, all the herein described messuages, tenements, tracts and parcels of land, with all and singular the appurtenances thereunto belonging, viz: one tract of land lying and being in the township of Cumberland Valley, county and state aforesaid, containing ninety-two acres one hundred and two perches, being the same tract or parcel of land that was conveyed by deed on the 18th of November 1831, by Leonard May and John May, executors of John May, deceased, to James Reeside, grantor above named. Also, all that certain lot or parcel of land which was conveyed by John Elder and Margaret his wife to the aforesaid James Reeside, lying

and being in the township, county, and state aforesaid, containing one hundred and fifty-three acres sixty-five perches. And the said James Reeside further covenants to and with the said William Lewis, that he, the said James Reeside, will, at or before the ensealing and delivery of these presents, make, execute, and deliver unto the said William Lewis, a full and perfect deed of general warranty for the premises above described, in fee simple, to him the said William Lewis, and to his heirs and assigns forever. Possession of the above described premises to be given by the said James to the said William immediately upon the execution of this instrument. In consideration of which, the said William Lewis covenants to and with the said James Reeside, to pay unto the said James the full and just sum of 3463 dollars 25 cents, immediately upon the execution of this agreement. In testimony whereof the said James and William have hereunto set their hands and seals, the day and year aforesaid."

" Received of William Lewis, the day and year aforesaid, 3463 dollars 25 cents, in full of the consideration-money above mentioned in manner following, viz:"

Here follows a number of notes or obligations, given by different individuals to the said William Lewis,. the amount of which are set down in figures, and added up, making altogether the sum of 3463 dollars 25 cents, the consideration-money mentioned in the above agreement, at the bottom of which is written, "full consideration, 3463 dollars 25 cents."

Then follows this additional clause:

" And it is further agreed upon by and between the said James Reeside and William Lewis, that the above described notes or writings for the payment or security of money, are to be and remain chargeable upon the foregoing described lands and tenements, and to be considered a lien, and in the nature of a mortgage upon the same, until the whole of the money to become due upon said notes or writings for the security of money as above described, shall be fully liquidated and satisfied. Witness the hands and seals of the parties, the day and year aforesaid."

The above instrument of writing is ackowledged by both parties.

A general warranty deed in fee simple, for the same land, bearing the same date with the foregoing instrument of writing, but not referring to it in any manner whatever, was made by the said James Reeside to the said William Lewis, a receipt given on the said deed for the whole of the purchase-money, and possession delivered, and both were recorded on the day of their date, and both in the same book. It is admitted that there was a book in the recorder's office specially set apart for the recording of mortgages, and called the Mortgage Book, but neither the agreement nor the deed was recorded in this book, but both in a different book, called the Deed Book, marked letter R.

[M'Lanahan v. Reeside.]

On the 16th of August 1838, James Reeside obtained a judgment against the said William Lewis, on the docket of the court of common pleas of Bedford county, for the sum of 1356 dollars 48 cents, which still remains unsatisfied, and which is admitted to be for the balance remaining unpaid on the said notes or writings, given for the purchase-money of the said tract of land as aforesaid, at the date of the settlement between the said Lewis and Reeside.

On the 11th of October 1836, William A. M'Lanahan & Co. obtained a judgment against the said William Lewis, on the aforesaid docket, for the sum of 443 dollars 44 cents, on which an execution issued, and the said real estate was sold by the sheriff to the said James Reeside for the sum of 3900 dollars to No. 24, January term, 1839.

The question for the court to decide is, whether the plaintiffs in this cause are entitled to the payment of their judgment out of the moneys now in the hands of the sheriff, arising from the sale of the tracts of land abovementioned and described in the foregoing agreement and deed, in preference to James Reeside, who claims to hold a lien under the said agreement in the nature of a mortgage. Should the court be in favour of the plaintiffs, then an auditor or auditors to be appointed, to marshal the funds in the hands of the sheriff among the several judgment creditors, after notifying said creditors in such manner as the court shall direct. But should the court decide for the defendant, then judgment to be entered that the sheriff distribute the money in his hands amongst the lien creditors accordingly.

The court below rendered a judgment for the plaintiff.

*Cline*, for plaintiff in error, cited 3 *Whart.* 20.
*Blodget*, for defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—This case is not exactly like Friedly *v.* Hamilton, 17 *Serg. & Rawle* 70, in which a recorded conveyance and an unrecorded defeasance, constituting an unrecorded mortgage betwixt the parties, were postponed to a subsequent judgment. But though both have been recorded in this instance, the principle applicable to them is the same. They were recorded in the same volume, on the same day, and though it does not expressly so appear, most probably in juxta-position. But a creditor in search of a clew to the title, would necessarily stop at a conveyance absolute on the face of it, and referring to nothing beyond it. He would have no reason to suspect that further search would lead to a defeasance of which, not lying in the channel of the title, he would not, though actually recorded, be bound to take notice; as was held in Woods *v.* Farmere, 7 *Watts* 385; for a purchaser of a regular chain of title is not bound to notice a thing which is not ostensibly attached

[M'Lanahan v. Reeside.]

to any part of it, as in Ripple *v.* Ripple, 1 *Rawle* 886, where a charge by the will of a devisor who had purchased by articles for his son, to whom the land was conveyed by the original owner after the testator's death, was held to require actual notice of it, in order to affect a purchase under a judgment against the son.　The difference betwixt that case and the case at bar, is that here the incumbrance is of record, and there it was not; but according to Woods *v.* Farmere, if the record of the incumbrance lay not in the creditor's way, he was not bound to notice it.　It is indeed of no account that the conveyance and the articles were not recorded in the book set apart for mortgages.　The keeping of such a book is an arrangement to promote the convenience of the officer, by contracting the surface over which he is to search for a particular thing; and he is bound to furnish precise information, get it as he may, of every registry in his office, whether made in the right place or not.　Nor is it material, on the other hand, that they were recorded in the same volume, or side by side.　The creditor may have actually seen no more than the absolute conveyance, which, referring to no other deed in *pari materia* as a part of it, would direct him to nothing beyond it.　Nor is this merely theoretical.　For what would a creditor in such a case direct a search?　Undoubtedly for that which is usually the consummation of all bargains and stipulations; and when the registry of it is put before him, without leading him to a suspicion of aught beside the existence of an absolute conveyance, might he not justifiably rest satisfied of the clearness of the title?　By allowing his eyes to range over the adjoining pages, in this instance, they might possibly have fallen on the registry of the articles; but the legal effect of their registration would be the same, were the place of it in another part of the book, for a question of constructive notice is not to be determined by the probability of actual notice.　It is of the last importance to creditors that the registry of a mortgage, by which they are to be affected, whatever the form of the transaction between the parties, should exhibit as a whole, connected and perfect in its parts.

But even were the registry of these two deeds taken as such, how could it benefit the case of the defendant below, who, as a purchaser subject to his own mortgage, as he must be deemed by force of the statute of 1830, must look, not to the purchase-money, but the premises in his own hands.　The agreement subjoined to the articles, if it did any thing, turned the conveyance into a mortgage, to secure the payment of the notes given for the purchase-money. What is "a lien, in the nature of a mortgage," but a mortgage itself? It is hard to conceive of a lien, simply, without a means to enforce it; yet I will not say there may not be such a thing.　But if the agreement in this case be not deemed a defeasance of the conveyance, and both together as constituting one instrument, then the registration is incontestibly several, and the creditor would be

bound to look no further than the conveyance: so that, in either aspect, the defendant below had no right to any part of the purchase-money.

Judgment reversed, and a *venire de novo* awarded.