# Green *against* Drinker.

A deed of conveyance executed and acknowledged in another State before a justice of the peace and recorded in Pennsylvania, is no notice to a subsequent purchaser for a valuable consideration.

The possession of land such as will dispense with the necessity of recording the deed for it, must be such an occupancy as will afford a stranger to the title an opportunity of making the necessary inquiry respecting it.

The Act of the 16th April 1840, made to cure defects in the acknowledgement of deeds, is not to be construed retrospectively in its operation so as to affect the title of third persons not parties to it.

ERROR to the Common Pleas of *Susquehanna* county.

The executors of Henry Drinker deceased, against John Green. This was an action of ejectment for 100 acres of land, on the trial of which the court below (JESSUP, President) thus stated the facts and charged the jury:

"The parties both derive their title under Ephraim Kirby deceased. The title in him is therefore taken to be valid. The plaintiffs derive their title under a deed dated 29th November 1806, made by Thomas Dyer and Joseph L. Smith, administrators of Ephraim Kirby deceased, under proceedings and an order of the Orphans' Court of the county of Luzerne. These proceedings, whether regular or irregular, warranted the making of this conveyance, and cannot be reversed or inquired into in this court. That court had jurisdiction, and having made an order of sale and confirmed it when made, we are concluded thereby. This deed vested the title in Henry Drinker and Jeremiah Mason. On the 9th August 1808, Jeremiah Mason and Henry Drinker made

partition, by which this lot No. 138 was parted to Henry Drinker. The plaintiffs are shown to be his legal representatives.

The plaintiffs have given in evidence assessments of this lot as follows:

To Ephraim Kirby as unseated in 1806; to the estate of Henry Drinker as unseated 1809–11–12, in the county of Luzerne.

Susquehanna county was erected in 1812. The lot was assessed as unseated to Henry Drinker's estate, for the years 1813–14–15 and 16. For 1817–18–19 it was not taxed. In the years 1820–1–3–4–5–6–7–8 and 9, it was again assessed to them as unseated. In 1830 and 1831 not assessed. For 1832–3–4–5 it was again assessed to Drinker's estate. In 1834 it was sold by the treasurer for non-payment of the taxes. In 1836 it was redeemed by James C. Biddle, the agent for the Drinker estate, who charged the amount of redemption to the said estate. Having thus derived their title from Kirby, the plaintiffs should recover unless their right be defeated by a better title of the defendants.

The defence is raised under a title from Ephraim Kirby by deed to John Foot, dated 14th July 1803. This deed was acknowledged before a justice of the peace in Connecticut, and entered of record in the recorder's office, in Luzerne county, on the 5th November 1803. In 1802 John Foot cleared about five acres, and sowed it with grain the same year. He again sowed it with grain in 1803. He harvested the grain in 1804. He did not live on the lot nor build on it, and, as the evidence clearly shows, never was on the lot to do any work after taking off the crop in 1804. The improvement was abandoned from that time, and soon grew up to briars and bushes, and the fences shortly went down. *William Ward* testified that in 1807, or about that time, he had a conversation with Foot, who said he had no deed, or did not know that he had a deed, or had not paid for the land. Mr Ward finding the deed in the recorder's office, and being interested in the other lot, arranged the claim with the administrators of Kirby in Connecticut, paid them for their claim on the land, and on the 23d July 1812, took a deed from Foot for both lots. This deed was recorded in Luzerne county, August 3d 1812.

On the 20th September 1813, William Ward conveyed to George Ewalt, and the deed was recorded on 9th October 1813.

Ewalt's heirs have been by consent admitted to defend in this case.

John Green, the defendant, entered upon this lot in 1826, cleared about five acres, raised grain thereon, and has continued in possession up to the present time. He has, in the course of the time he has occupied the lot, cleared about sixteen acres.

By the evidence of Mr Vance and the assessment rates, it appears that this lot, with five acres of it as improved land, was, in 1829, assessed to John Green for county taxes, and has so continued to be assessed to the present time. Mr Blowers states that

in 1827 he assessed the road tax to John Green and he paid it. No connection between Green and Ewalt's heirs is shown. Green is not their tenant or vendee.

To the validity of the title thus deduced by the defendants, the plaintiffs object for the following reasons:

1. That they are not to be affected by the deed of Kirby to Foot, because it was not acknowledged or recorded according to law.

This question appears to be settled by a variety of decisions, which affirmed the position that if a deed be irregularly recorded it is not notice to a subsequent *bona fide* purchaser. This deed was not so acknowledged as to authorize its being recorded, and was not therefore notice to Drinker. The Act of 16th April 1840 is not to be construed as having a retrospective effect so as to make the *irregular recording* of a deed valid as against a person not a party to the deed, if indeed it has any effect upon the *record* or gives to it any validity whatever. That statute makes valid the deed as against the grantor, and entitles *it to be* recorded. But most clearly *could* not devest the title of other persons acquired before the passage of the Act under deeds duly recorded.

2. That the possession of Foot in 1806 was not such a possession as was notice of the title by which he held the lands.

The general principle is, that possession of land is notice of the title by which the party claims, and a purchaser is bound to inquire of *him* in possession, or he buys at his own risk. The possession in such case must be sufficient to indicate the persons who claim it. It must be distinct and unequivocal. It is therefore for the jury to ascertain from the evidence, whether there was such a possession in November 1806 as would put Drinker upon inquiry for the title. If the lands were then abandoned by Foot, returned by the assessor as unseated, the cleared land growing up to bushes and briars, the fences down, and the whole unoccupied, it would not be such occupancy and possession as in law would be constructive notice, for there would be no person exercising such acts of ownership over the land as would indicate him as the owner.

3. It is further objected under the evidence of Mr Summers and Mr Ward, that the deed was never delivered by Kirby to Foot, and that Foot did not pay anything for the lands.

Depositing the deed in the recorder's office is not conclusive of a delivery by Kirby. It goes, with the other facts in the case, to the jury. If the deed were not delivered, no title would vest in Foot by the conveyance itself.

4. It is further contended on the part of the plaintiff, that if Foot abandoned the land after 1804, it would again become liable to assessment in 1806 as unseated. This position is correct, and the evidence clearly proves that nothing was raised or kept on the place after 1806.

[Green v. Drinker.]

5. It is further claimed by the plaintiff, that if the deed to Foot were valid, and vested in him the better title, still that having paid the taxes assessed on it for more than twenty-one years, they can now hold it under their title by the Statute of Limitations. To this the court answer, that this land was not liable to taxation as unseated after 1826.  It was first assessed to the plaintiff in 1809, and Green paid the taxes on it in 1829.  Without deciding how far a claimant of lands out of actual possession can acquire title by the payment of taxes for twenty-one years, the court instruct the jury, that the plaintiff, not having paid taxes for that length of time prior to the defendant's actual possession, cannot recover on that ground.  No tax could properly be assessed as unseated upon the lot after 1826, for Green was then occupying and improving it.  Foot, Ward and Ewalt, do not appear ever to have paid any attention to the lands unless since Green has been in possession, but permitted Drinker to pay the taxes from 1809, so long as they were assessed to him.  In a contest between two holding title to the same lands, not in actual possession of either, one of whom pays taxes on the lands for twenty-one years, the other paying no taxes and asserting no claim to the land during that time, the jury will presume an abandonment of the land by him who thus neglects, in favour of him who pays the public duties.  Such is the principle of the case of *Royer* v. *Benlow*, (10 *Serg. & Rawle* 306), and other cases decided by the Supreme Court on this subject.  But that does not go far enough for the facts of this case; if the plaintiff recover it must be upon the other grounds of defect in the defendant's bill.

*Bently* and *Richards*, for plaintiff in error, referred to the Act of 3d April 1826; 16th April 1840; 16 *Serg. & Rawle* 35, 169.

*Elwell* and *Williston*, contra, whom the court declined to hear.

The opinion of the court was delivered by

Huston, J.—The judge who tried the cause having detailed the evidence, minutely instructed the jury upon the law arising out of the facts; and to this opinion the errors are assigned. 1st. In saying that there was no connection between Green and Ewalt. After suit brought, and perhaps before, when he heard of Drinker's title having been sold, he said to one person that he claimed under Ewalt: but there was no intimation of any lease, parol or written, or any kind of contract between them.  The judge did not, therefore, err in saying there was no evidence of any such thing.

The next error assigned was in saying to the jury that the deed from Kirby to Foot, having been illegally recorded, was no notice to a subsequent purchaser.  The judge was right in saying that this had been so often decided that the law was settled. 2 *Binn.* 42.

The next assignment of error was in the opinion of the court

[Green v. Drinker.]

to the jury that the act of the 16th April 1840 was not to be construed retrospectively so as to affect the title of a third person not a party to the deed. This statute makes the record valid against the grantor, but clearly it cannot devest the title of other persons acquired before its passage. Our first Recording Act was passed for the purpose of giving a deed of bargain and sale the effect of feoffment in transferring the possession, and also of preserving the deed by making a certified copy of it when duly recorded as good evidence as the original. The next Act made the recording of a legally proved or acknowledged deed notice to affect all subsequent purchasers from the same grantor. Where a matter, not in fact known, is to affect a person with notice, it must be a thing done according to the law which makes it notice. A deed acknowledged in another State might always have been legally recorded, but the law provides before what officers such acknowledgement must be made (and a justice of the peace is not one of them) or by what evidence it must be authenticated. I am not sure that the fifteenth section of the Act of the 16th April 1840 was not intended to be applied solely to cure defects in the acknowledgements of deeds by husband and wife, as the next section goes to supply the defects in such acknowledgements made in this State. But however this may be, the fifteenth section does not speak of or cure the defective or illegal acknowledgement of deeds theretofore executed, nor does it repeal that provision of the Recording Act of 1775 which postpones an unrecorded title to one subsequent to it, which is duly recorded. There was no error in this part of the charge.

The remaining error assigned was to the opinion of the court with regard to the alleged notice arising out of the occupation of the land before 1804. The court left it to the jury whether there was any such occupancy of the land in the month of November 1806 as would put any person on inquiry, or whether there was any indication of the person of whom inquiry might be made. The defendant had no cause to complain of this part of the charge.

Judgment affirmed.