## Hottenstein *versus* Lerch.

1. Whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to knowledge of the requisite fact by the exercise of ordinary diligence and understanding.

2. The actual possession of a tract of land by one, other than the holder of the recorded title, is sufficient to put an intending purchaser upon inquiry as to the occupant's title. The possession of a tenant is notice to a purchaser both of his own and of his landlord's title, which would have been developed by inquiry.

3. A purchaser is affected with notice of an unrecorded title if such notice be acquired by him directly from any person interested in the title, but he is not affected by a mere general rumor that an adverse unrecorded title exists.

4. A., without inquiry of the tenants in possession, purchased a tract of farm land (without buildings), from B., who had purchased it a short time previously at a sheriff's sale as the property of C., who was the owner of the recorded title. C.'s wife, however, was the equitable owner under an unrecorded trust deed. The said tract adjoined another tract owned by C.'s wife, on which C. and his wife lived, and both tracts were being farmed together as one tract, on shares, by the wife's tenants. B. never had possession. In ejectment by A. against C. and his wife:

*Held*, that the evidence was properly submitted to the jury to determine whether the possession of C.'s wife, by her tenants, was such as to affect A. with notice of her unrecorded title.

March 9th 1882.* Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lehigh county :* Of January Term 1882, No. 285.

Ejectment, brought December 7th 1880, by Levi S. Hottenstein and Charles L. Hottenstein against Nathan Lerch and Catharine Lerch his wife, for a tract of farm land in Hanover township, containing between nine and ten acres. Plea, not guilty.

On the trial, before ALBRIGHT, P. J., title was admitted in John A. Dech on April 2d 1857. The plaintiffs deduced title from him as follows :

1857, April 2d. Deed. John A. Dech and wife to Nathan Lerch and his heirs, for the tract in question. Recorded, May 11th 1857.

---

* This report was inadvertently omitted from its chronological order.

[Hottenstein *v.* Lerch.]

1880, May 3d.   Judgment. Farmer's Mut. Fire Ins. Co. *v.* Nathan Lerch, for $21.   Fi. fa., vend. exp. and sheriff's sale of said tract to Marcus C. L. Kline, for $1.  Sheriff's deed to him acknowledged November 16th 1880, recorded November 18th 1880.

1880 November 29.   Deed. Marcus C. L. Kline, to the plaintiffs, recorded same day.

The defendants offered parol evidence to show that in 1857, when the tract was conveyed by Dech to Nathan Lerch, Mrs. Lerch, wife of Nathan Lerch, paid the purchase money thereof, $1,225, out of her separate estate.   They put in evidence, deed dated April 1st 1879, from Nathan Lerch and Catharine his wife to Reuben Lerch, for the premises in question, in trust for said Catharine Lerch.  This deed was not recorded until December 20th 1880.   It further appeared from the defendant's evidence that Nathan and Catharine Lerch lived on an adjoining tract owned by Mrs. Lerch which she had acquired from the estate of her father, deceased ; the two tracts had originally belonged to her father and had formed together the homestead tract.   Mrs. Lerch had for seventeen years let the tract on which she lived to Reuben Lerch, Samuel Beil and her son Preston Lerch, who farmed it " on shares " with her, and after the deeds from Dech to Nathan Lerch, and from the latter and wife to Reuben Lerch in trust for Mrs. Catharine Lerch, she let both tracts as one farm to the same tenants, who farmed the same on shares with her, and who had possession thereof as farm land at the date of the deed from Kline to the plaintiffs. The tract in dispute had no buildings upon it.

The plaintiffs made no inquiry of said tenants as to the title under which they occupied and farmed the tract.

The defendants further testified that notice of Mrs. Lerch's unrecorded title was read at the sheriff's sale at which Kline purchased, but it was not shown that the plaintiffs received any direct notice thereof.   It was shown that John Rupp, Esq., was present at said sheriff's sale, and that he became the counsel of plaintiffs and instituted this suit about a week after the plaintiffs took title from Kline, and about a month after the date of the sheriff's sale to Kline.

The plaintiffs presented, inter alia, the following points :

7.   There is not sufficient evidence in this case to be submitted to the jury, that at the time of the purchase by plaintiffs of the premises in question, Mrs. Catharine Lerch had the clear, open, notorious and unequivocal possession and occupancy of the premises in question.

Answer.   This is not affirmed.   The question as to whether or not there was possession of the character required to affect the purchasers is referred to the jury.

[Hottenstein *v.* Lerch.]

10. There is not sufficient evidence in this case to be submitted to the jury that the plaintiffs or either of them had actual notice of the unrecorded deed of Mrs. Catharine Lerch.

Answer. Refused.

The defendants presented, inter alia, the following point:

1. Whether or not the plaintiffs are bona fide purchasers of the premises in dispute, without notice of the title of Mrs. Lerch, is a question of fact for the jury.

Answer. Affirmed.

The court charged the jury, inter alia, as follows:

"It is the law, that even if a deed is not on record but another person takes title with notice of that deed, then he is not an innocent purchaser, and is not within the provisions of the Act of Assembly. If he purchases with knowledge or with notice of that deed, then he is not an innocent purchaser.

"It is claimed on the part of the defendants, that they have shown that the Messrs. Hottenstein, or one of them, had notice of the title of Mrs. Lerch to this land. The law is, that the notice to affect a purchaser must be derived in some form from some one who is interested in the title. Persons who are about to purchase property are not affected by mere rumor, or by the statements made by those who have nothing to do with the property, but they are affected by the information which they derive from those who are interested in it.

"So far as the evidence in this case shows, the only parties other than the Messrs. Hottenstein who were interested in the title to this property, were Mr. Kline and Mr. Nathan Lerch and his wife; and before the Messrs. Hottenstein can be affected by notice it must be shown that this notice proceeded from Mr. Kline, Mr. Nathan Lerch, or his wife, who are the persons who were interested in the title. If you cannot find this fact from the evidence, then you cannot determine that they had that notice which will affect them.

["In the next place, it is claimed, on the part of the defendants, that there were circumstances connected with this transaction which made inquiry a duty on the part of the Messrs. Hottenstein. That is a question for you to determine. If you find that there were such facts and circumstances connected with the transaction, that would have given the required information if they had pursued the inquiry, and if you find that those facts and circumstances were of such a character that a failure to make the inquiry would be gross and culpable negligence, then it would be equivalent to notice, and the plaintiffs would be affected by whatever information they would have derived if they had made the inquiry.] In that event, as it could not be said that they were innocent purchasers, the title of Mrs. Lerch will prevail as against them, and your verdict

[Hottenstein v. Lerch.]

should be in favor of the defendants. [In this connection you will remember, however, that the facts and circumstances connected with the transaction must be of such a character that a failure to obtain the requisite knowledge would be gross or culpable negligence, and that a party who thus purchases is not compelled to act upon merely vague reports or rumor.]

" It is also necessary at this time to refer to the connection with this matter of Mr. John Rupp, counsel for the Messrs. Hottenstein. The rule is, that the party is affected by the knowledge of his agent or his attorney, because an attorney acting for is the agent of his client, provided, that the information which the agent possesses was derived in the line of his employment as such agent.

" [If Mr. Rupp obtained such knowledge of the title to this land as would affect the Messrs. Hottenstein, after they had employed him as their attorney, then, according to the instructions I have given you, the plaintiffs are affected because of that knowledge of their agent] (eleventh assignment of error) ; but if he obtained the information before he became their attorney, then the plaintiffs cannot be affected, and it also follows that if he obtained this information after the title was made to the plaintiffs they cannot be affected by such information.

" If a person employs an attorney to attend to a matter of business or a purchase of property, as the Messrs. Hottenstein it seems did in this case, and if that attorney, in the line of that employment, while considering and investigating the matter, obtains knowledge such as would affect his principal, if he had obtained the knowledge himself, then the principal is affected ; but if a person happens to employ an attorney who had obtained prior information affecting the title to certain property which was desired to be purchased, it would be unreasonable and unjust to hold that simply because that particular attorney had been employed, the purchaser should be affected by the knowledge which that attorney had previously obtained. I therefore instruct you that even if Mr. Rupp had knowledge of the title of Mrs. Catharine Lerch, which he had obtained before he became the attorney of the Messrs. Hottenstein, and not while he was acting for them, the plaintiffs are not affected by such knowledge, and that whatever knowledge they obtained, either of themselves or through Mr. Rupp, their counsel, after they had taken the deed, cannot affect their title. The question is, what knowledge or notice of the facts or circumstances was there connected with the transaction up to the time that the transfer of the title from Mr. Kline to the Messrs. Hottenstein took place ? . . . I have instructed you that in order to affect a stranger the possession of property must be open and

[Hottenstein *v.* Lerch.]

notorious. The question for you to consider then is whether Mrs. Lerch had such an open and notorious possession of this land, that a stranger to her or her husband could observe it. If she had not, then the possession amounted to nothing at all as notice, and it cannot affect the plaintiffs.

" It appeared in evidence that she and her husband lived together in a house adjoining this disputed land, and she testified that it belonged to the homestead tract of land. If the possession of Mrs. Lerch was the same after she got the deed as it was before, and if her husband really was the party who controlled the property, or if they controlled it together, then it could not be contended that she had an open and notorious possession, and, therefore, her possession could not affect the plaintiffs. If the plaintiffs are to be affected by the possession which it is alleged Mrs. Lerch had of this disputed land, the defendants must prove that she had an open and notorious possession, so that it could have been observed by persons who were strangers both to her husband and herself. If you find that Mrs. Lerch had such possession of this land, as I have described, then it was notice to the plaintiffs, and they cannot recover. If you find that she had no such possession, then the plaintiffs are not to be affected by it, and, so far as that question affects the case, you will find a verdict in favor of the plaintiffs."

Verdict and judgment for defendants, whereupon plaintiffs took this writ, assigning for error, inter alia, the answers to plaintiffs' and defendants' point, as above, and the portions of the charge above inclosed in brackets.

*John Rupp*, for plaintiffs in error.—There was no evidence of notice sufficient to submit to the jury. It is well settled that notice to a grantor is not notice to his bona fide grantee : Good *v.* Bausman, 6 Weekly Notes 93. The sheriff's title, too, was freed of any claim on behalf of grantees of the defendant in the execution, by unrecorded titles : Stewart *v.* Freeman, 10 Harris 120. The doctrine of " scintilla" is not in force in Pennsylvania, and there was nothing more in this case : Express Co. *v.* Wile, 14 Sm. 201 ; Raby *v.* Cell, 4 Norris 80 ; Hyatt *v.* Johnston, 10 Id. 196.

When real estate is transferred by a husband to his wife, as this was, and the husband and wife continue to live together upon adjoining land, of which the property transferred is a part, as they did in this case, there can be no such clear, open, notorious and unequivocal possession by the wife as to put strangers upon inquiry, and thus be equivalent to notice of the wife's title. In such case the possession of the wife is the possession of the husband. The wife cannot have possession

[Hottenstein *v.* Lerch.]

of property adverse to that of the husband. There is no presumption in favor of the wife of the ownership of property. The presumption is, that property in the joint possession of husband and wife is owned by the husband. And if the wife claims it the burden is on her to prove title to the property : Rhoads *v.* Gordon, 2 Wright 277 ; Curry *v.* Bott, 3 Smith 400 ; Keeney *v.* Good, 9 Harris 349 ; Topley *v.* Topley, 7 Casey 328 ; Walker *v.* Reamy, 12 Casey 410.

*Edward Harvey* (*James B. Deshler* with him), for defendants in error.—There was ample testimony of facts sufficient to put purchasers upon notice to justify submission to the jury : Jaques *v.* Weeks, 7 W. 261 ; Lodge *v.* Simonton, 2 P. & W. 439 ; Sergeant *v.* Ingersoll, 3 H. 343. It is not necessary for a married woman to show possession as against her husband ; when she has shown title and possession with him she has satisfied the requirements of the law : Holcomb *v.* Bank, 11 Norris 343 ; Hoar *v.* Axe, 10 Harris 381 ; Manderbach *v.* Mock, 5 Casey 43 ; Walker *v.* Reamy, 12 Id. 410.

Mr. Justice GREEN delivered the opinion of the court, April 3d 1882.

The plaintiffs derived title to the land in controversy by deed from M. C. L. Kline, dated November 29th 1880. Kline's title was by a sheriff's deed dated November 16th 1880. He was the owner of the apparent legal title for thirteen days. He was never in possession of the premises. The land was actually occupied by other persons than the vendor, before, and at the time, the plaintiffs made their purchase and took their deed. The learned court below submitted to the jury the question whether there were circumstances connected with the transaction which made inquiry a duty on the part of the plaintiffs, and also the question whether Mrs. Lerch, one of the defendants, had such open and notorious possession of the premises, as amounted to constructive notice of her title. This action of the court is assigned for error, inter alia. The complaint is not so much concerning the statement of the rule in regard to constructive notice, as presented by the court, as it is to the application of it to the facts of the case. Or rather, the argument is, that the necessary facts to render the rule applicable do not exist. In order to consider the merits of the contention intelligently, it is necessary to determine with some care what the terms of the rule are. The language in which it is expressed has not varied from the earliest to the latest of the cases in which it has been announced. Thus in Jaques' *v.* Weeks, 7 Watts 261, and in Maul *v.* Rider, 9 P. F. S. 167, it is stated in identical words : "Whatever puts a party upon

[Hottenstein *v.* Lerch.]

inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding." The rule is a broad and general one, and includes other subjects than the unrecorded title to land. Even when that one subject is the occasion of a judicial controversy the rule has two well-defined and distinct branches. One of them relates to notice of an unrecorded title by *information* of its existence, communicated verbally. In this class of cases it is well settled that a party is not affected by a mere general rumor, and notice of such a rumor is neither actual nor implied notice of the existence of such a title. It is also held that the information must come from some person interested in the property and must be directly communicated to the party sought to be affected. All the cases assert this distinction. The other branch of the rule referred to, relates to the effect, as notice, of actual possession of the land in question by another than the grantor of the party to be affected. Such possession is the equivalent of notice, and therefore is notice, because it is inconsistent with the title conveyed to the purchaser, and because it is the duty of a purchaser to regard such a possession and inquire into its character. If the inquiry would result in knowledge of the requisite fact, the purchaser is bound by the actual state of the title, whether he made the inquiry or not. Thus in Jaques *v.* Weeks, 7 Watts 276, KENNEDY, J., in stating the rule, says: "Every purchaser of land, I take it as a general rule, must be presumed in equity to know whether the possession be vacant or not; and if a third person be in the actual and visible occupation of the land at the time of his purchase, it is sufficient to put him on inquiry, in order that he may know by what tenure or right such person holds the possession ; and whatever is sufficient to put the party on inquiry is equivalent to notice in equity" (citing several cases). Accordingly it was held in Daniels *v.* Davison, 16 Ves. 249 ; 17 Id. 433, that the possession of a tenant who had taken it under a lease for a term of years, and during the pendency of the lease made a contract with his lessor for the purchase of the reversion, was notice to a subsequent puchaser, the lease being still unexpired, not only of the tenant's interest under it, but likewise of his equitable title to the estate, under his contract for the purchase of it. . . . Sir THOMAS PLUMER, Master of the Rolls, likewise in Meux *v.* Maltby, 1 Swanst. 277, said that it had been repeatedly decided that the purchaser of an estate in possession of a tenant was bound to inquire by what right and under what agreement the tenant held it.

The doctrine of Daniels *v.* Davison, was recognized and enforced by this court in the case of Kerr *v.* Day, 2 Harr. 112.

On p. 117, BELL, J., says, " Carnahan's possession as the tenant of Cuddy, is attended with the same effect in imposing the duty of inquiry upon Day, the second purchaser, as though Cuddy himself had been in possession." In Hood v. Fahnestock, 1 Barr, on p. 474, ROGERS, J., said, " Hood, the purchaser from Magill, knew, or, which in law is the same thing, ought to have known, that there was a tenant in possession of the estate he was about to purchase. He was bound to inform himself, as we have seen, of the conditions of the lease ; and in doing so, he must have discovered, if he was before ignorant of the fact, that the person in possession held it as the tenant of Jacob Herrington, the man who, in conjunction with his brother, concocted the fraud. The purchaser was bound to make inquiry ; and if this duty which the law throws upon him had been exercised with due diligence and proper discretion, can a doubt remain, it would have led to a knowledge of the important fact that Jacob Herrington was the landlord of the tenant in possession ?"

It is clear, therefore, that the possession of a tenant is notice of his own title as tenant, and also of the title of the landlord under whom he holds, and that a purchaser is bound by the fact of such possession to make inquiry as to the state of the title, and is chargeable with notice of the actual condition of the title which such inquiry would have developed. In Sailor v. Hertzog, 4 Wh. 259, it was held that the law presumes that a purchaser of real estate will not trust merely to the title papers and records, but will inquire of the person in possession whether he claims title to the land. If the possession is distinct and unequivocal, it is sufficient to put the purchaser on inquiry, and amounts to constructive notice. In illustration of the kind of possession which would be sufficient to charge a purchaser with notice, Judge ROGERS, who tried the case at Nisi Prius, and whose rulings were approved by this court, referred in his charge to the jury to a case in which the possession was by the cultivation and cutting of willows, to use for making baskets, upon a piece of meadow ground. That case, though not named by Judge ROGERS, was Krider v. Lafferty, 1 Wh. 303. There the holder of the unrecorded title, claiming, against a purchaser at sheriff's sale of the title of the apparent owner, one acre, part of a tract of twenty acres of meadow land, was held to have a good title by force of his possession alone operating as notice to the purchaser. On p. 318, KENNEDY, J., who delivered the opinion of this court in the case of Sailor v. Hertzog, supra, said : " When Lafferty bought, it was meadow, and part of a larger tract of land owned by John Lentz at the time. Lafferty, it seems, was a basket-maker ; and immediately after his purchase, the ground being set apart

from that owned by Lentz, he took possession of it, planted it with willows for the purpose of supplying himself with materials to carry on the business of his trade, and continued to occupy it, growing willows upon it and cutting them every year at the proper season. This visible change in the appearance and occupation of the ground could not well fail to attract the notice of the neighborhood ; and hence it would seem that all the witnesses who had resided within the same for any length of time had become acquainted with Lafferty's occupation of the ground. His position then, being sufficiently distinct to be notorious, was sufficient' to put Krider upon his inquiry as to the right under which Lafferty held the possession of the land, and being sufficient for that purpose was good notice in equity." It will be observed that in this case the mere annual entry for the purpose of cutting willows upon a small part of a tract of meadow land, which tract was in the apparent ownership and actual possession of another, was a sufficiently notorious, visible and actual possession, to constitute notice of the title of the person exercising such acts of ownership, and· to charge a purchaser at sheriff's sale, of the title of the apparent record owner, with notice.

In the case of Green *v.* Drinker, 7 W. & S. 440, it was held that the possession of land such as will dispense with the necessity of recording the deed for it, must be such an occupancy as will afford a stranger to the title an opportunity of making the necessary inquiry for it. In Meehan *v.* Williams, 12 Wr. on p. 241, we said : " What makes inquiry a duty, is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell."

Applying these principles to the facts of the case at bar ·it will not be difficult to determine the present contention. Kline was the purchaser at sheriff's sale. He was entirely disabled from setting up any title acquired by that sale against Mrs. Lerch, because distinct notice of her title was given at the sale to all bidders and was heard by him. It is true the Hottensteins were not bound by that notice, but they were bound by whatever information they received from him, and by the actual possession of the land. Kline testified that he told Levi Hottenstein, whilst he was bargaining with him for the sale of the land, that it was sold at sheriff's sale as the property of Nathan Lerch. Levi Hottenstein himself testified that he knew the land, that he had often seen it, and last saw it about two months before he got the deed. He said also that it was good farming land and that he had been told by Jonas Wieand that it contained between nine and ten acres, and that he wanted it for a truck farm. He admits that he did not look up the title before he purchased, and he got no one to examine the title for him.

[Hottenstein *v.* Lerch.]

The other testimony showed that the land in question had no buildings on it, but adjoined another lot with a dwelling-house and barn on it, which Catharine Lerch owned in her own right, having derived the same from her father's estate. Nathan Lerch and his wife lived on this lot for many years. Mrs. Lerch was the owner of all the personal property on the premises, and the two lots were farmed together as one. It was testified that the whole was let to croppers who farmed it on shares. E. S. Hockman testified that Reuben Lerch farmed it before 1879 and since 1879 Samuel Beil and Preston Lerch. He also testified that Mrs. Lerch got the share of the proceeds of the farm belonging to her, some of which was consumed, and some sold and the money for it paid to her. Mrs. Lerch testified that Reuben Lerch farmed the place for her and also her son Preston and Samuel Beil; that it was farmed on shares by them for her and that she received a share for seventeen years. We do not discover that this testimony was contradicted by any witnesses, and it would therefore seem that Mrs. Lerch was in possession of the whole property by her tenants at the time of and before the sheriff's sale to Kline. The actual cultivation of the land as farm land every year was notice of its possession sufficient to put any purchaser upon inquiry. Such inquiry would have informed the purchaser of the persons who were in actual possession, and of the title by which they held it, and this would at once have developed the title of Catharine Lerch as lessor.

There does not appear to be any testimony that Nathan Lerch ever leased the property to any one, or that he ever farmed it himself. It is claimed, that he was in possession because he and his wife lived together and were in the joint occupancy of the property. But in point of fact neither of them lived on the land in dispute, and the land they did live on was the actual, exclusive and notorious property of the wife. Although Nathan Lerch held the title in his own name to the nine-acre lot, his wife testified that she paid for it, and this was probably the reason why she received the proceeds for so many years. Had Nathan Lerch farmed the land himself, or had he leased it to croppers as his own, or had the land been entirely unoccupied, the legal inference would have been that the actual title corresponded with the title as it appeared of record, and Catharine Lerch's claim under her deed of April 1st 1879 would have been nugatory as against these plaintiffs. But none of these facts appear in the testimony; on the contrary, the evidence is all the other way, and hence it was the duty of the court to leave the case to the jury, on the questions of possession, and of the existence of facts sufficient to put a prudent man upon inquiry. There were other facts in testi-

[Hottenstein *v.* Lerch.]

mony tending strongly to prove that the plaintiffs did not desire to have information in regard to the title; but it is unnecessary to recur to them in detail, as they are not essential to the determination of the questions before us. There was no distinct evidence that the plaintiffs were directly informed of the existence of Mrs. Lerch's title, or that their counsel acquired knowledge of it in their employment of him in connection with this transaction; but there is an inference that they had knowledge of it in some mode, from the fact that they brought suit against Mrs. Lerch only a few days after the date of their deed. The learned judge of the court below was very careful and entirely correct in his statement of the rules of law applicable to the case, and to the testimony. He distinctly told the jury that the only direct notice of Mrs. Lerch's title which could affect the plaintiffs must come from Kline or the defendants, and if they could not find any such testimony in the case they could not find any such notice. He did not tell them there was any evidence from which they might infer such a notice. The whole of what the court said upon this subject must be considered, and not merely what was expressed in a selected portion of the charge, disconnected from the rest. The same remarks are true of what was said in regard to knowledge of Mrs. Lerch's title on the part of Mr. Rupp. The matter of the eleventh assignment is only a part of a sentence, the whole of which, when taken together, is a mere explanatory presentment of the subject in connection with the preceding, and subsequent, portions of the charge on the same topic. There is no error in the statement, or in the application of the rule of law. The words assigned for error are hypothetical and illustrative, and are not a committal of the question of fact to the jury. Further on in the charge, and in the same connection, the learned judge expressly told the jury that Mr. Kline stated, that in the interview between him and Mr. Rupp nothing was said which would amount to notice such as would make inquiry a duty. The other assignments are met by what we have heretofore said in relation to the general subject of notice, and they are not sustained.

Judgment affirmed.