# Green *versus* Kellum.

1. As between intruders the first in possession is best in right.

2. An entry is by *color of title* when made under a *bonâ fide* claim to the land.

3. A disseisor, claiming the land, after being in possession executed a mortgage under which the premises were sold at sheriff's sale, and part of them was afterwards re-sold by a second purchaser to the disseisor or mortgagor. In an action of ejectment by the heir of the disseisor against a subsequent intruder, it was *held* that these proceedings were evidence in his favor that the original entry of the disseisor was made under a *bonâ fide* claim to the survey.

4. A disseisor who entered into possession of a survey, claiming to be the true owner of it, made improvements, claiming to the eastern line of it, the boundary between it and two other surveys, and exercised acts of ownership up to that line by cutting fire-wood and carrying on sugar-works, is to be considered as in possession by *color of title*—his constructive possession is coextensive with his color of title, and such possession for twenty-one years gave title even as against the real owner.

5. An entry on the land by an intruder during the twenty-one years, in order to make a survey, did not interfere with the running of the statute. An entry by the true owner alone can toll the statute.

[Green *v.* Kellum.]

ERROR to the Common Pleas of *Susquehanna county*.

This was an action of trespass by Luther Kellum against John F. Green.

The plaintiff claimed the land in question under Luther Kellum, his father, who, in 1810, entered upon land, part of which was in controversy, and which was covered by a warrant in name of *Jonathan Nesbitt*, and was holding the same at the time of his death, which took place about seven years before the trial. The plaintiff claimed under the statute of limitations.

The *defendant* claimed under Dr. Rose, who was the owner of two surveys adjoining the east line of the Nesbitt survey; and in running the lines of which surveys the surveyor ran a line about six rods over the line claimed as the *east line* of the Nesbitt survey. The defendant afterwards cut timber on the interference, for which this action was brought. The two adjoining surveys, formerly claimed by Dr. Rose, were in the name of Cornelius Barnes and John Montgomery; the warrants were dated in 1784, and the surveys called for the Nesbitt tract on the west.

On part of the *plaintiff* was given in evidence the warrant to Jonathan Nesbitt for 300 acres. Survey thereon on 14th September, 1776, for above 306 acres. O. S. Beebe, a surveyor, was called, who said he was on the ground some months before the trial, and identified the survey. He said the clearing made by the defendant was on the Jonathan Nesbitt tract.

He said he made a survey for *Dr. Rose* in 1838, in order to establish the line of this survey, and returned to him the line six rods *west* of the east line of the Nesbitt survey as his line.

Another witness testified that Luther Kellum in 1810 was living on the premises on which the plaintiff lives. The witness was along when the surveyor above referred to made the survey. That Kellum said we should run to the east line. Kellum used the woods for making sugar. He tapped *to the east line*. That some time after the said survey was made, Kellum said that Rose had been surveying, but as he had not interfered with him, he cared nothing about it.

There was given in evidence, on the part of the plaintiff, the record of proceedings by a *sci. fa.* on a mortgage. The *sci. fa.* was issued to April Term, 1822, in favor of Beebe and another *v.* Luther Kellum and two others. October 29, 1822, Kellum consented to judgment, which was entered on 4th December, 1822, for $2055.55. *Lev. fa.* December 28, 1822; returned premises sold to John Jameson, one of the plaintiffs, for $120. Sheriff's deed July 15, 1822. In May, 1824, Jameson conveyed to Adrian Bush 106 acres 40 perches, part of the Nesbitt tract; and by deed dated September 18, 1832, Bush conveyed to Luther Kellum.

. Another witness said he had known the premises for forty years, and had many times seen the two lines spoken of. That Kellum

claimed to the *east* line of the Nesbitt tract, to a beech tree at the foot of a hill. The other line was six rods west. He always used the woods to the east line in sugar making, and frequently took wood from it. He also said that between fifteen and twenty years ago, the father had one half of the 106 acres run off in order to convey to his son, and that he run to the *east line*.

On part of the *defendant* it was stated that a line six rods west of what was admitted at the trial to be the east line of the Nesbitt survey, had been run by a surveyor in 1810, for Dr. Rose, and it was said that the line so run was then supposed to be the true division line of the warrants.

Another surveyor was called on part of defendant, who said that in 1812 he went to run off a lot for another person, and that Kellum either went with him or directed him to the line formerly run for Dr. Rose, as the east line of the Nesbitt survey. He said he thought he understood Kellum to say that he had taken possession under a *Connecticut title*.

Another witness stated that he was along with the surveyor in 1812, when the line was run—that he lived in the neighborhood since 1810, and had never heard of any other line till 1827. That he was working in Kellum's sap bush in 1810, '11, or '12, and that Kellum showed him the two corners of the Leonard lot, meaning the west line of the Rose survey, claimed by the defendant. (Leonard claimed under Dr. Rose to the west line.)

The witness said he had the Leonard lot in his possession from 1814 till 1826—and that it was in the possession of others till 1841. Since which time, he, the witness, had held it. The Leonard lot lies east of the plaintiff's. The line in dispute, if established by the plaintiff as his, would take about six rods off the lot of the witness.

There was given in evidence a deed from Rose to Leonard, dated 14th December, 1812, for 126.1 acres, as surveyed in 1812, and certain conveyances from Leonard.

It was shown that *Green, the defendant,* held under Rose, by contract of sale in 1847.

WILMOT, J., charged the jury (*inter alia*) that if Kellum, the father, claimed up to the east line of the Nesbitt tract (which line was at the trial admitted), then the Court could not see "any title or shadow of title in the defendant; and if the plaintiff had in his possession as woodland adjacent to his improvement the land on which the trees were cut by the defendant, he was entitled to recover."

He previously charged that he did not perceive how any question arose as to the tolling of the statute of limitations; but he charged that the entry of *the owner* alone could toll the statute. If Kellum claimed up to the old east line, no entry of Rose could impair or affect his claim, because Rose had no right of entry.

[Green v. Kellum.]

Verdict was rendered for the plaintiff.

Error was assigned to the instructions stated.

*W.* and *W. H. Jessup*, for plaintiff in error.—The entry by Dr. Rose claiming to the west line, and having it defined and marked upon the ground, and the possession continued by Leonard and those who claimed under him from 1810, gave title by the statute of limitations against the holders of the title under the Nesbitt warrant: 5 *Barr* 300, Waggoner v. Hastings. Neither party had exclusive possession or claim. Kellum entered under a Connecticut claim, and had no title or *color* of title to the Nesbitt tract. Evidence that he claimed to the east line would in 1812 give him no title to it. Rose entered with claim of title and color of title. His surveyors, three in number, had returned to him the line claimed by the plaintiff as the true line of the Nesbit tract. There was no evidence that Kellum, the father, had ever given notice of his claim as far as the east line to Rose, or others claiming under him. In 1812 Rose had the same right of entry that Kellum had. His agents or vendees entered with Kellum's knowledge and assent. His claim was continued, as was Kellum's, and it was submitted that against Rose, Kellum had no right.

The Court assumed that the claim of Kellum was an uninterrupted claim, and excluded Rose's claim as invalid on the ground that Kellum had a better right. It was admitted that if Kellum had been in possession with title, the position would have had foundation; but, it was said, there was none, as he had neither title nor color of title.

*Bentley* and *Fitch*, for defendant in error.—The *owner* alone, not a trespasser, can toll the statute: 4 *Barr* 254, Altemus v. Long.

Neither Rose nor the defendant had any actual possession of the land in dispute.

The land in possession of Green was wild land; and whatever questions might arise as to the *Leonard* lot, they cannot affect the question between the parties to this suit. The plaintiff claims to have had possession of the land in controversy, and that neither Rose, Leonard, or Green ever had actual possession of it.

The warrant of Rose was bounded by the line of the Nesbitt warrant, and neither Rose, Leonard, or Green could have had constructive possession of any land west of it: Altemus v. Long, before referred to.

The facts in relation to the possession, were properly left to the jury. Rose never paid for the land in dispute, never paid taxes for it, and never had it in his possession.

The opinion of the Court was delivered by

WOODWARD, J.—The argument of the plaintiff in error rests on the assumption that Kellum's possession was without color of title; and if this foundation be taken away, the argument falls into ruins. Long before there was any possession of the Barnes and Montgomery warrants, as early as 1808, according to the defendants' testimony, Luther Kellum, the elder, went into possession of the Nesbitt survey and made an improvement claiming to the eastern line, which is admitted to be the true original boundary between the Nesbitt and the Barnes and Montgomery surveys, and exercised acts of ownership quite up to that line by taking fire-wood and carrying on sugar-works. What was this but color of title? Such acts indicate clearly the *bona fides* of his claim to the Nesbitt survey, and the complete disseisin of all other claimants from every part of the tract. "To give color of title," said Chief J. GIBSON, in McCall *v.* Neely, 3 *Watts* 72, "would seem not to require the aid of a written conveyance, or a recovery by process and judgment, for the latter would require it to be *the better* title. I would say that an entry is by color of title when it is made under a *bonâ fide* and not pretended claim to a title existing in another. It is impossible to say, therefore, that a disseisor claiming to be the true owner of a survey, as he may in fact be without being named in the warrant, does not enter by color of title." And if such an entry and claim be color of title, then, according to all the cases, the constructive possession is coextensive with the color, and twenty-one years of such occupancy gives title even as against the real owner.

But as against a subsequent intruder there can be no question that Kellum's possession was coextensive with the lines of the Nesbitt survey: Hoey *v.* Firman, 1 *Barr* 300; Bishop *v.* Lee, 3 *Barr* 217. Why should not an actual possession, though wrongful as to the legal owner, be protected from the trespass of one having no right? An intruder into unoccupied lands is not an outlaw. If he enter peaceably, he has a right to remain peaceably until expelled by the owner or some one who can show a superior right of possession, and his possession is so far an object of the law's regard, that time will mature it into a perfect title. As between intruders, the first in possession is best in right. Rose and his alienee had no title or color of title to Jonathan Nesbitt, and no possession, for the jury have found Kellum's possession to have extended to the east line, the admitted boundary of the tract. The entry of Rose, then, whether to survey or to take timber, was a breaking of Kellum's close, for which an action lies.

But again. According to the meagre and defective statements of the paper-books we find old Luther Kellum sued, in 1822, as a mortgagor of the Nesbitt tract—that he confessed a judgment on

which a sheriff's sale of the tract was made to John Jameson, who afterwards conveyed 106 acres 40 perches, part of the tract, to Adrian Bush, who conveyed the same to him, Kellum. Here was color of title according to the most commonly received ideas of the phrase, and further evidence that his entry from the first had been under a *bonâ fide* claim to the Nesbitt survey. That the 106 acres embrace the land in dispute must be inferred from the evidence having been admitted without objection.

The assumption, then, that Kellum was a mere squatter without color of title, insufficient, if well founded, to justify the entry of a subsequent intruder, is utterly baseless. The plaintiff below holds the land in controversy by a descent cast—his ancestor entered in 1808, and occupied under color of title. According to the oldest principles of the common law, a disseisor has a good possession against everybody but the true owner, and his heir is in by a better right than himself; and according to the modern doctrine by which the statute of limitations is administered in Pennsylvania, his title was perfected long ago even as against the original owner. The entry of Rose to survey at any time during the running of the statute did not toll it, for it is the entry of the owner alone that can have this effect, and Rose had not a shadow of title to the Nesbitt survey.

On the whole, we think there was no error in the instructions given, and the judgment is affirmed.