# Johns, Appellant, v. Johns.

*Real estate—Statute of limitations—Adverse possession—Insufficient evidence—Parol gift—Ejectment.*

1. Where a party relies on the statute of limitations to prove a title he must show that he and those under whom he claims entered into possession of the premises under a claim of right and have had actual, adverse, continued, visible, notorious, distinct and hostile possession thereof for the full period of twenty-one years.

2. One who takes possession of land under a parol gift holds the land under a claim of right, not as a licensee of the holder of the record title.

3. Where a party in possession of land relies upon the statute of limitations to prove title and claims that his entry thereon was under a parol gift, and therefore adverse to the holder of the record title, he must show that when he entered into possession of the property he had reason to believe that it was given to him and in the absence of evidence to show that he had warrant for such belief his entry will be presumed to have been under a license from the record owner.

4. When the possession of one person is shown to have been in subordination to the title of another, the presumption is that the possession so continued and proof sufficient to overcome the presumption must show that the holder of the record title had express notice that the party in possession was claiming adversely.

5. In an action of ejectment plaintiff claimed title to the land in dispute under the will of the record owner. The defendant, a son of testator, claimed title by adverse possession for more than twenty-one years, alleging a parol gift by the testator. Defendant offered evidence of a declaration made by testator at the time of defendant's marriage that "I can give my son as good a house as any one needs to live in, myself; I will give him a home," although at that time no buildings had been erected and no lot had been designated as the home of defendant; and of a statement made to workmen engaged in building a house on the ground that testator "was building the house for Henry" and of a further remark by testator in reply to a question from the workmen as to whether he could do as well by the rest of the boys that "they would all get their shares but that was Henry's." There was no evidence as to the communication of these latter statements to the defendant and no evidence that subsequent to the entry the possession was

changed from a permissive to a hostile possession. *Held,* the court erred in refusing to direct a verdict for the plaintiff.

Argued Oct. 30, 1913. Appeal, No. 141, Oct. T., 1913, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1910, No. 566, on verdict for defendant in case of Sarah Johns, now Edward A. Johns, Executor, v. Henry Johns, Jr. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Ejectment for land in the City of Pittsburgh. Before EVANS, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Errors assigned,* among others, were the refusal of the court to direct a verdict for plaintiff and to enter judgment for plaintiff n. o. v.

*Samuel S. Mehard,* with him *William H. Thompson* and *William E. Hague,* for appellant.—There was no sufficient evidence of a parol gift followed by adverse possession to submit to the jury: Graham v. Craig, 81* Pa. 459; Ewing v. Ewing, 96 Pa. 381; Campbell v. Braden, 96 Pa. 388; Moreland v. Moreland, 121 Pa. 573; Truman v. Raybuck, 207 Pa. 357.

*George Wilson,* of *Wilson & Evans,* for appellee.

OPINION BY MR. JUSTICE STEWART, February 9, 1914:

The subject of the present dispute is an improved lot of ground in the City of Pittsburgh, part of a larger lot which Henry Johns, Sr., through whom both parties to the controversy claim, acquired by purchase in 1859. By his last will Henry Johns, Sr., devised his entire estate to his widow Sarah Johns, the original plaintiff in the present action. The defendant is Henry Johns, Jr.,

son of Henry Johns, Sr., who, resisting plaintiff's right to recover, claims that he entered into possession of the property originally in 1875 pursuant to a parol gift from his father, and that he has held it adversely without interruption to the present time. The trial in the court below resulted in a verdict for the defendant, and the appeal is from the judgment entered thereon. The evidence with respect to the parol gift was wholly insufficient to establish the fact claimed. The learned trial judge very properly held that, accepting the evidence at its full value, it did not establish a gift to the land. So apparent was its insufficiency for this purpose that on the trial defendant placed no reliance upon it except for the purpose of establishing the adverse character of his possession. It is only in connection with the question thus indicated that it calls for consideration here. The argument advanced in support of appellee's contention in this regard largely assumes an original entry by the defendant pursuant to the alleged parol gift, and the contention is that notwithstanding the evidence was insufficient to establish a gift which operated to vest the title in the defendant, yet, if the defendant believing the gift to be absolute and effective entered into possession under that belief, his possession thereafter was to be considered as adverse and hostile. This view of the case prevailed with the trial judge, as appears in the following extract from his charge: "There was no absolute parol gift, so far as the evidence shows in this case; but one who takes possession under what the courts have held to be a pretended gift, and in good faith believing that he is taking possession under a gift, and so takes possession and so holds that land, holds that land under his own claim of title and not under the title of his pretended donor. So that becomes a very important question in this case. Did Henry Johns, Jr., when he moved into the house in 1875, go in there either as a tenant of his father, or under a license from his father to occupy at the will of his father; or did he go in there believing

that his father had made a gift to him, and did he take possession of the land as his own land under what he thought was a gift from his father to himself?" This instruction clearly indicated the true, and, in our view, the only issue of fact in the case. We infer defendant's acquiescence and approval since no exception on his part was taken to the instruction. In an unequivocal way it asserts that the defendant's original entry upon the land can be regarded as an adverse and hostile occupancy, only as it has been made to appear that the entry was made in the honest belief that his father had given him the land; and in this it accords with our ruling in the case of Greenawalt v. Hamilton, 4 Penny. 495. In the case referred to the following point was submitted by the defendant: "The real question for the jury is, not what the donor Moorhead intended, but what Craig's understanding was, what he claimed and what he did. Did Craig consider the gift absolute, and under that idea did he hold adversely to Moorhead for the period of twenty-one years? If he did, that is an end of this question of title." The answer was, "This point is affirmed, if the jury is satisfied from the evidence that Craig had a right to understand from the language and acts of Moorhead at the time that the gift was to him." On review, this court said: "When carefully examined, there is no error in the answer to the third point submitted by plaintiff in error. Craig should not be permitted, without evidence or reason, to understand the gift was made to him. The language and the acts should be such as to satisfy the jury that conclusion claimed by him was a reasonable one." So the one determining question here must be whether the defendant, in entering into possession of the property, had reason to believe that his father had given it to him as his own. If he had, it may be assumed that his entry was in consequence; if he has shown no warrant for such belief, his entry will be presumed to have been under a license from his father, and therefore in subordination and allegiance to the latter's

superior title. The burden is always upon the party claiming by adverse title to show when his adverse holding began, for without such initial point established, there can be no telling whether, if it existed at all, it continued for the statutory period. In the present case, except as it began with the original entry, there is, as we shall show later, no such evidence from which an adverse holding at any time can be inferred. Therefore it is, that the controlling question here is whether the original entry was adverse, and this can be determined in support of defendant's contention only as he has shown that the entry was made in the assertion of a belief, arising on facts and circumstances warranting such belief, that the land had then been given to him by his father. In considering the sufficiency of the evidence to warrant a conclusion favorable to the defendant on the latter proposition, we are to have regard to a period antecedent to the entry into possession of the house in 1875; for, manifestly, what subsequently occurred would be without relevancy to this particular issue. We are concerned at present to inquire only as to the reasonableness of defendant's asserted belief in 1875 that the property was his when he made his entry. The most careful examination of this record will disclose nothing coming from the father prior to the entry which, in our judgment, could have induced a belief in any reasonable mind that he had divested himself of the ownership of the land in favor of his son. The only evidence offered which in the remotest degree gives support to defendant's contention in this regard, was that which recites an interview between Henry Johns, Sr., and the father-in-law of the defendant, the defendant himself being present, when the father-in-law proposed that defendant and his wife should make their home with the wife's parents. It was not involved in this proposition that the father-in-law was to transfer by gift or otherwise any part of his estate to provide a home for defendant and his wife; the proposition con-

templated nothing more than that they should make their home with him in the same house in which the wife's parents resided. The answer was, "No, I can give my son as good a house as any one need to live in myself, I will give him a home." It would be stretching credulity to the utmost to understand from this, even by implication, a gift of a house the building of which had not been entered upon, and of a lot undesignated. And yet, nothing but this can be relied upon as showing the slightest ground for the belief on defendant's part, when he entered into possession, that the property had been given him. There was testimony that during the building of the house the father remarked to one of the workmen there engaged, John H. Jones, that "He was building the house for Henry," and that in reply to a question from the witness as to whether he could do as well by the rest of his boys, the father said "They would all get their shares, but that was Henry's." To another witness the father, while the building was in process of erection, said "I am building this house for my son Henry." This testimony could have no significance, in connection with the question we are now considering, except as the facts stated had been communicated to the defendant and influenced his action in entering on the property, and the evidence is silent with respect to its communication. We are concerned at this point only with such testimony as disclosed acts and circumstances which might be regarded as furnishing a basis for an honest belief on part of defendant that the home was his at the time he entered into possession, and it is all to be found in the interview between Henry Johns, Sr., and the defendant's father-in-law, as above recited. On no other occasion does the evidence bring the defendant and his father face to face when the subject of the former's future home was even remotely referred to. On this branch of the case there was nothing calling for a submission to the jury, and there should have been a ruling by the court

that there was no warrant in law for a conclusion that defendant's original entry was adverse and hostile.

The question next to be answered is whether any adverse and hostile possession was shown sufficient to defeat plaintiff's right to recovery. The original entry not having been shown to be adverse, when, if ever, did adverse possession begin? When the possession of one person is shown to have been once in subordination to the title of another, it will not be adjudicated afterwards adverse without clear and positive proof of its having distinctly become so; for every presumption is in favor of the possession continuing in the same subordination to the title. Rung v. Shoneberger, 2 Watts 23. The proof must reach so far as to show that the adverse possession assumed was brought to the knowledge of the holder of the title. The position taken by such an one requires express notice of the change in the previous character of the tenure before the statute shall begin to run. "This may be considered the general doctrine derived from the cases and principles cited. But then what is express notice? The literal meaning of the term is, plain and clear notice; and is certainly no more than actual notice. We think therefore, that the charge of the court below, on the subject, is substantially correct. The learned judge, who delivered it, very properly said, the statute would not begin to run, until the possession became adverse by some decisive acts or declarations, showing the same to have become hostile, and, 'done or made in such a manner, and under such circumstances, as to leave no doubt in the mind of the jury, that they were brought home to the knowledge of John M. Hood, or his agent, if he had any.' " Hood v. Hood, 2 Grant 229. To the same effect is the ruling in Martin v. Jackson, 27 Pa. 504. In brief, the rule requires that the specific acts or declarations relied upon as showing a change from the original tenure must be the equivalent of an actual ouster. Since the statute will only begin to run from the date when such specific acts or declara-

tions were made, our inquiry into the evidence must be confined to the period between the entry on the land and twenty-one years from the bringing of the action, which was December 9, 1909. The burden is on the defendant to show that the adverse possession he claims began twenty-one years before the action was brought. This burden was not met by showing improvements made by defendant in 1898 and in 1901; nor by showing that the father subsequent to 1899 provided homes for others of his sons; and therefore all this evidence may be disregarded. Confining ourselves to what occurred prior to 1888, the evidence shows absolutely nothing done by the defendant which, by the largest indulgence, could be allowed as evidencing a change on his part from a permissive to a hostile possession; certainly nothing that would bring home to the owner of the title notice of any such change in attitude towards him. It cannot be contended that the planting of trees on the property in 1884 was notice to the owner that thenceforward the continued possession was to be adverse. Such an act was not remotely inconsistent with the father's continued ownership. The record may be searched in vain for anything more specific or decisive on the part of the defendant within the period indicated than this small incident of planting trees. There is much evidence that later on, within the period of twenty-one years from the commencement of the action, the father, in referring to the property, spoke of it as the defendant's; quite enough we think to make it clear that the home was built for the defendant's accommodation, but nothing that would indicate that the father had ever understood, or had reason to suppose that the son's occupancy was adverse to his own title. On the other hand, the testimony covering this period discloses facts which indicate that during this time the father was repeatedly asserting his continued ownership. But this testimony does not here call for consideration. We find nothing in it which could be regarded as a specific and distinct assertion by

the defendant of his ownership as against the father; and even were it otherwise, it all relates to a time within the statutory period, and would therefore be unavailing. "Where a party relies on the statute of limitations, as giving him a positive title, one with which he can successfully assail even the holder of the legal title in possession, he ought to be held to show all the elements constituting it, conjoined and united in his hands; and that he, or those under whom he claims, entered into the possession of the premises, claiming the same as and for his own property, and that as such he has held actual, adverse, continued, visible, notorious, distinct, and hostile possession thereof, for the full period of twenty-one years.......A court should, in case of such a title, see that there is evidence to go to the jury on all these points.  If it be wanting as to any of them, then an essential of title is wanting, and the duty of the judge is plain.  He should instruct the jury that there is not sufficient evidence to entitle the plaintiff to recover." DeHaven v. Landell, 31 Pa. 120.  In what we have said we have indicated the essentials which are lacking in the defense here set up.  Binding instructions should have been given for the plaintiff.  The court therefore erred in overruling the plaintiff's motion for judgment non obstante and the judgment entered on the verdict is reversed, and judgment is now entered in favor of the plaintiff.