381 A.2d 487

**Goldie BURNS, Appellant,**

**v.**

**Paul V. MITCHELL and Harriette K. Mitchell, his wife, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1976.

Decided Dec. 28, 1977.

258

Richard F. Flickinger, Ligonier, with him Flickinger & Flickinger, Ligonier, for appellant.

James N. Falcon, Greensburg, submitted a brief for appellees.

Before JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Appellant, Goldie Burns, brought this action in equity to enjoin appellees from encroachment upon a ten by one hundred and eighty feet strip of land located in a residential district of Westmoreland County. Said strip of land is claimed by both parties, and lies between the properties of appellant and appellees, who are adjoining landowners. The chancellor ruled that neither party had a superior right to the disputed land and ordered equal division of the land between appellant and appellees. Appellant filed exceptions which were dismissed by the court en banc, and the chancellor's decree was entered as a final decree. This appeal followed.

Appellees claim that they acquired title to the disputed strip of land pursuant to an action to quiet title which judgment became final on July 24, 1975, while appellant claims that she acquired title to the same strip by adverse possession prior to appellees' 1975 action to quiet title. Because we find that, as a matter of law, title to the entire disputed property lies in the appellant, we reverse.

Initially, we find that neither appellant nor appellees had record title to the disputed strip prior to final judgment on appellees' action to quiet title.[1] Although appellant occupied a tract of land of sixty by one hundred and eighty feet she

---

1. Record title to the disputed ten by one hundred and eighty feet strip of land was in Roy E. Sibel. On January 16, 1917, Roy E. Sibel, being the vested owner in fee of a lot *sixty* by one hundred and eighty feet purportedly conveyed the same lot to Henry Clark. However, in the deed the property is described as a lot of *fifty* by one hundred and eighty feet, rather than a lot of sixty by one hundred and eighty feet. Therefore, apparently unwittingly, Roy E. Sibel retained a ten by one hundred and eighty feet strip of land for

received record title on April 7, 1937 to only fifty by one hundred and eighty feet.[2] As to appellees, Paul and Harriette Mitchell, they could only get record title to that land which was owned by their predecessors in title. The record indicates that until 1964 appellees' predecessors in title occupied and had record title to a tract of land of fifty by one hundred and eighty feet and that there was subsequently an error in the description of appellees' property which inaccurately described the property as a tract of sixty by one hundred and eighty feet rather than fifty by one hundred and eighty feet.[3]

■ We find, however, that appellant had obtained title by adverse possession prior to appellees' 1975 action to quiet

himself, said strip being the basis for the instant dispute. Although a quit-claim deed was executed by Gertrude Sibel Crawford, sole surviving heir of Roy E. Sibel, conveying to appellant "any interest which may have remained in Roy E. Sibel by his conveyance in which the lot was described as a fifty foot [sic] lot rather than a sixty foot [sic] lot," this conveyance occurred subsequent to appellees' action to quiet title. Moreover, in light of our determination of this case the execution of said deed only gave appellant record title to that which she had already acquired by adverse possession.

2. See footnote 1, supra, for an explanation of the discrepancy between the width of the tract of land appellant occupied and the width of the tract of land to which appellant had record title.

3. The record, as to appellees' chain of title reveals that, on March 30, 1918 James Boyd conveyed a lot fifty by one hundred eighty feet to Clark W. Weimer who sold the lot to James S. Weimer, who on December 23, 1919 sold the lot to Celia Weimer McKlveen. Celia Weimer McKlveen died intestate in 1956. On August 3, 1964, the County Treasurer of Westmoreland County sold to the County Commissioners of Westmoreland County property of Mrs. Harry McKlveen for unpaid taxes, penalties, interest and costs for the year 1962. Although the record does not reveal the description of the property in this sale or the relationship between Mrs. Harry McKlveen and Celia Weimer McKlveen, for the purposes of this appeal, we assume that Mrs. Harry McKlveen had title to the fifty by one hundred and eighty feet lot previously conveyed to Celia Weimer McKlveen. Then, on May 2, 1973, by private sale, the County Commissioners sold said property to James L. Falcon. However, the lot was inaccurately described as sixty by one hundred and eighty feet rather than fifty by one hundred and eighty feet. Finally, on February 20, 1975, James L. Falcon conveyed the same lot, described as sixty by one hundred and eighty feet, to Paul and Harriette Mitchell, appellees herein.

title.[4] The uncontradicted testimony of appellant's son,[5] which was corroborated by present and former neighbors in the area, established that a fence between the Burns and Mitchell properties had been in existence since sometime before 1937, that appellant had occupied up to the fence line since she acquired her land in 1937, that the fence line had not been replaced or otherwise changed since 1937 and, that appellant had maintained her lawn up to the fence line since 1937. Furthermore, appellees admit that the disputed ten feet wide strip of land is located on appellant's side of the fence line. Quoting *Miles v. Penna. Coal Co.*, 245 Pa. 94, 91 A. 211 (1914) and *Brown v. McKinney*, 9 Watts, 565, 567 our Supreme Court noted in *Dimura v. Williams*, 446 Pa. 316, 286 A.2d 370 (1972) that:

> "[I]f a long-standing fence is relied upon for the establishment of a boundary between two adjacent parcels of land . . . ' "[i]t cannot be disputed that an occupation up to a fence on each side by a party or two parties for more than twenty-one years, each party claiming the land on his side as his own, gives to each an incontestable right up to the fence, and equally whether the fence is precisely on the right line or not." Our courts have always favored the settlement of disputes of this character by recognizing consentable lines established by the parties themselves, and this without regard to whether the line agreed upon conforms to the exact courses, distances and bounds of the original surveys.' " 446 Pa. at 318–319, 286 A.2d at 371.

**4.** As Judge Spaeth correctly points out in his concurring opinion appellant could have successfully argued that regardless of whether the requirements for adverse possession were met, a person in possession of land has a claim to it that is superior to that of any other claimant except the rightful owner. *Green v. Kellum*, 23 Pa. 254 (1859), *Hoey v. Furman*, 1 Pa. 295, 300 (1845), *Garlock v. Fulton County*, 116 Pa.Super. 50, 176 A. 38 (1935). However, appellant chose to argue that at the time of appellees' action to quiet title, appellant was, in fact, the rightful owner, having acquired title by adverse possession, and therefore we decide the issue of adverse possession.

**5.** Appellant, Goldie Burns, a woman of advanced age, was unable to appear.

Appellees nevertheless contend, and the lower court found, that appellant's evidence failed to establish the necessary elements of adverse possession. The law in Pennsylvania has long been that to acquire title by adverse possession, that possession must be hostile, adverse, open, visible, notorious and continuous for a period of twenty-one years. *Conneaut Lake Park, Inc., v. Klingensmith*, 362 Pa. 592, 66 A.2d 828 (1949); *Parks v. Pennsylvania P. R. Co.*, 301 Pa. 475, 152 A. 682 (1930); *Johns v. Johns*, 244 Pa. 48, 90 A. 535 (1914); *Boyer v. Lengel*, 224 Pa. 357, 73 A. 323 (1909). Appellees argue that appellant failed to make out a case of adverse possession in that appellant failed to show the requisite hostile intent. For example, appellees note that appellant failed to affirmatively assert a claim to the land prior to the instant litigation despite her opportunity to do so in the face of appellees' contrary claim of title. This argument has been rejected by our court. As we noted in *Lyons v. Andrews*, 226 Pa.Super. 351, 359–360, 313 A.2d 313, 316 (1973):

"It is true that some jurisdictions 'hold that the possessor's mistaken belief in his ownership negatives the existence of a necessary hostile intent . . . . These jurisdictions identify hostility with the common-law tort of disseisin, i. e., forcible ouster. The theory is that one who does not know he is in possession of another's land cannot harbor the specific intent to oust the other out of his land.' Note, A Reevaluation of Adverse Possession as Applied in Boundary Dispute Litigation, Rutgers-Camden, L. J. 293, 299 (1971). But most jurisdictions 'deem the animus of the possessor irrelevant. Rather, they look to the actual physical facts of the possession to determine if such circumstances of notoriety exist so that the true owner is put on notice. They represent a belief that the nature of the possession alone is what is important and that a sufficiently notorious possession will always be enough to alert the owner. Therefore, the hostility is implied if all other elements have been established.' Id. at 298. See also Annot., 80 A.L.R.2d 1171 (1961).

"Pennsylvania follows the majority view." [6]

Therefore, we find that appellant obtained title by adverse possession to the disputed ten by one hundred and eighty feet strip of land by 1958, twenty-one years after she acquired title to her adjacent parcel of land.

■ Our inquiry, however, cannot stop with this finding as appellees further contend that they acquired title to the disputed ten by one hundred and eighty feet strip by virtue of their default judgment in an action to quiet title, a judgment which became final on July 24, 1975. We emphatically reject this argument. The facts of the case at bar are undisputed. The action to quiet title on a sixty by one hundred and eighty feet lot named various McKlveens and unknown heirs as defendants, but did not name appellant. At no time did a McKlveen have title to any more than a fifty by one hundred and eighty feet lot. At no time was appellant personally served with the complaint even though she, at all relevant times, was in possession of the disputed land. Service was effectuated by publication pursuant to Pa.R.C.P.1064(c) which provides, in pertinent part, that:

"If a defendant is dead or his identity or whereabouts is unknown, and an affidavit to that effect is filed, the plaintiff may serve the defendant by publication in such manner as the Court by general or special order shall direct . . ."

Even though affidavits were filed and publication was accomplished pursuant to a valid court order, such service was ineffective as to appellant. A party in actual possession of real property which is the subject of a quiet title action

6. The lower court also emphasized the fact that appellant obtained a quit claim deed for the disputed land in 1975 and that this action showed that appellant did not in fact believe that she had title to the disputed land. Even though what appellant believed is not controlling, *Lyons v. Andrews*, supra, we feel it is important to note that the lower court is confusing title by adverse possession with marketable or record title. It is perfectly consistent for appellant to claim title by adverse possession and also seek to obtain record title through a quit claim deed.

cannot be regarded as a dead or unknown person within the meaning of Rule 1064(c) as to be bound by a judgment based upon service by publication. This is especially true when, as in the case at bar, that party is not only in actual possession but, in fact, has title. To hold otherwise would be a blatant violation of procedural due process.

Decree reversed and case remanded for the entry of decree not inconsistent with this opinion.

SPAETH, J., files a concurring opinion in which HOFF-MAN, J., joins.

SPAETH, Judge, concurring:

I agree with the majority that the service of process in the appellees' quiet title action was ineffective to bind appellant. In addition, however, I think that in questioning whether appellant fulfilled the requirements for adverse possession, the majority should acknowledge a long established rule: a person in possession of land has a claim to it that is superior to that of any other claimant except the rightful owner. *Green v. Kellum*, 23 Pa. 254 (1854), *Hoey v. Furman*, 1 Pa. 295, 300 (1845), *Garlock v. Fulton County*, 116 Pa.Super. 50, 176 A. 38 (1935); 3 Am.Jur.2d § 237. Here, the rightful owners (prior to the execution of the quit claim deed) were the heirs of the 1917 grantor, who mistakenly granted ten feet less than he thought he was granting, or anyone who may have established adverse possession before appellant herself took possession of the land. Appellees may not use *jus tertii*, the right of a third party, to get appellant out, and cannot win on any other basis except adverse possession of their own, which they never had.

HOFFMAN, J., joins in this opinion.