**INDIAN CAVE ENTERPRISES, INC. and John J. Scoblick, Jr., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 665–81L.**

United States Claims Court.

June 29, 1984.

---

C.H. Welles, IV, Scranton, Pa., for plaintiffs. Welles & McGrath, Scranton, Pa., of counsel.

Pamela S. West, Trial Atty., U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., with whom was Asst. Atty. Gen., F. Henry Habicht, II, Washington, D.C., for defendant. Loretta E. Alkalay, Staff Atty. Federal Aviation Administration, Jamaica, N.Y., of counsel.

## OPINION

WIESE, Judge:

Plaintiffs, Indian Cave Enterprises, Inc. ("Indian Cave") and John J. Scoblick, Jr. ("Scoblick") are the successive owners-in-fee of the remaining portion of a certain tract of land, part of whose original acreage had been acquired by the United States through formal condemnation proceedings. The remaining portion of this condemned property—that not taken by the United States—was acquired by plaintiffs several years later. In their complaint, plaintiffs allege that the Declaration of Taking under which the Government's condemnation was carried out had misdescribed the boundaries of the property being condemned, in consequence of which the Government mistakingly entered upon, and has ever since continued to occupy, a portion of the adjacent land (the ownership of which plaintiffs later acquired) without payment of compensation. It is also claimed that land which the United States has been leasing from a third party for use as an access road to the condemnation site is, in actuality, property of which plaintiffs were and are the true owners. Plaintiffs seek compensation for each of these separate but related inverse condemnations.

The United States has moved for summary judgment contending that, as to the principal taking being alleged, plaintiffs' suit is time-barred, and, as to the claim for the use of the road, plaintiffs have no standing for lack of ownership. Plaintiffs oppose and seek summary judgment in their favor. The court, having considered the briefs and oral arguments of counsel, concludes that the Government is entitled to judgment in its favor.

### Facts

On June 9, 1951, the United States, acting on behalf of the Federal Aviation Agency ("FAA"), filed a declaration of taking for the acquisition of fee simple title to approximately 119.38 acres of land located in Jefferson Township, Lackawanna County, Pennsylvania. The land was a portion of that realty, some 420 acres in all, locally referred to as the Mary Conrad Tract. The condemnation site was acquired for construction of an air navigational aid to be known as the Lake Henry VORTAC Facility ("VORTAC").[1]

---

1. "VORTAC" identifies a "Very High Frequency Omnirange Station and Ultrahigh Frequency Tactical Air Navigational Aid".

In an order entered November 21, 1957, the district court concluded that the owner of the condemnation tract was the First National Bank of Plymouth, Pennsylvania (now the Wyoming National Bank of Wilkes-Barre) and that taxes were due and owing to the County of Lackawanna. The court order approved distribution of the estimated amount of just compensation (as determined by appraisal) between these two claimants.

Construction of the VORTAC facility and associated buildings was begun by the FAA in 1951 and completed in 1958. There have been no additions or modifications to these structures since that time. In the same year that the United States moved to acquire the VORTAC site by condemnation, it also undertook to acquire, by lease, an access road to that site. Land for the road was leased from one Emery Propst in 1951 and, pursuant to this lease and its annual renewals the United States continued payments to Propst and his heirs until 1979.[2] Construction of the access road was undertaken and completed in 1951. Other than necessary repair and maintenance operations, there have been no changes to the road as originally leased.

The successive ownership interests which plaintiffs are asserting here trace back to 1950 and to an agreement of that year between John J. Scoblick, Jr. and the First National Bank of Plymouth, Pennsylvania. This agreement contemplated Scoblick's purchase of the Mary Conrad Tract from the bank for the sum of $2,500. A check in the amount of ten percent of the purchase price accompanied the signing of this agreement.

Execution of this planned property transfer was delayed for a number of years, presumably because of the then-pending condemnation proceedings. Although a draft of a proposed warranty deed was submitted to Scoblick by the bank on August 29, 1952, nothing came of this. In fact, it was not until November of 1959—well after the Government's condemnation action and facilities construction had been completed—that the bank, acting in accordance with Scoblick's instructions executed a deed conveying title to the remainder of the Mary Conrad Tract, less some 50 acres in the southeasterly corner, to Indian Cave Enterprises, Inc. (then known as Blueberry Corporation of America).

Ownership of the property thus acquired remained in Indian Cave's hands until April 15, 1974; on that date, the deed to the property was conveyed to Scoblick. Similarly, as to the 50 acres which had been reserved by the bank upon its transfer of the property to Indian Cave, these too came into Scoblick's ownership through an adverse possession proceeding. His total holdings in the Mary Conrad Tract, therefore, came to roughly 320 acres.

Questions concerning the boundaries of the land which the United States had condemned for the Lake Henry VORTAC facility began to be raised by plaintiffs in 1971. Then, in May of 1974, Scoblick engaged the services of a surveyor to determine the metes and bounds of the property. The surveyor, however, died before his work was completed. Shortly thereafter (*i.e.*, in 1977), the Government itself decided to undertake a survey of the property. According to plaintiffs, the Government's survey (which was not completed until April of 1980) "for the first time, corrected a misapprehension concerning the property lines which had been created by errors in the Government's original Declaration of Taking in 1951" in that it revealed the location of the Lake Henry VORTAC facility to be upon lands formerly owned by Indian Cave and now owned by Scoblick. Also apparently shown by the survey was that the right of way which the United States had been leasing from Emery Propst was, in fact, land owned in part by plaintiffs.

In consequence of these various allegations, plaintiffs seek damages from the United States in the amount of $1,416,000 plus interest from November 10, 1959 (the

**2.** Payments made after 1979 are being deposited into an escrow account because the Government has not been able to locate either the Propst's or their heirs since that time.

date the property was conveyed to Indian Cave by the bank).

## Discussion

### I.

■ The Government has moved for summary judgment on the ground, among others, that plaintiffs' suit is, in part, barred by the statute of limitations. Beyond doubt, it is. Title 28 of the United States Code, Section 2501 (1982), provides that every claim over which this court has jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." The taking of chief concern here—the Government's construction of a building whose siting resulted in the permanent invasion of adjoining land—was an event that was final and complete in November of 1958, some 23 years prior to the initiation of this action. Since all events that identified the taking were then in place, plaintiffs' suit should have been brought no later than November of 1964.[3] A suit at this late juncture is time-barred. *Kabua Kabua v. United States,* 212 Ct.Cl. 160, 165, 546 F.2d 381, 384 (1976); *Bayshore Resources Co. v. United States,* 2 Cl.Ct. 625, 633 (1983).

Plaintiffs argue, however, that the facts upon which their claim is based did not really come to light until completion of the Government's land survey in 1980; indeed, they say that until that time they had been misled by the Government's misdescription of the correct boundaries of the property upon which the Lake Henry VORTAC Facility was built.

This contention can gain them nothing. "A grantor or true owner of land should know how much land he owns. There is no reason to protect him from his mistakes merely because the other party erroneously occupies his land under a mistaken claim of right." *Lyons v. Andrews,* 226 Pa.Super.

351, 359, 313 A.2d 313, 316 (1973). Plaintiffs cannot avail themselves of the Government's mistaken understanding of the proper line boundaries to toll the limitations period with respect to an action—here an overt and permanent intrusion upon neighboring property—that was clearly recognizable as a taking at the time it occurred. Theirs is not a case of blameless ignorance but, rather, an ignorance of facts that ought to have been known. The facts necessary to establish a taking being as much available to plaintiffs at the time in question as now, their suit for inverse condemnation is therefore time-barred. *Japanese War Notes Claimants Ass'n. v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356, 359 *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967).

### II.

■ With respect to plaintiffs' demand for compensation on account of the Government's use of a right-of-way over land to which they claim title, the Government answers by affidavit saying as follows: that the record ownership of the land has been in the name of Emery Propst, the Government's lessor, from at least 1951 and that, beginning in that year and continuing ever since, the United States has obtained use of the land through a formal lease arrangement—one that is annually renewed and properly recorded with the Recorder of Deeds of Lackawanna County. On the basis of this course of dealing, the Government maintains that had there been any defects in Propst's title initially, the claim of ownership demonstrated through his open, visible, notorious and continuous use of the property in the manner described for more than 21 years would suffice under applicable State law to establish title by adverse possession.

---

**3.** For purposes of this opinion, we assume, without deciding the point, that through Scoblick's 1950 purchase agreement with the bank, plaintiffs derived an equitable ownership in the property sufficient to grant them standing to contest a taking action that pre-dated their acquisition of legal title to the affected property. Absent this assumption in their favor, plaintiffs would fail at the threshold to meet the rule set out in *United States v. Dow,* 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), that it is the owner at the time of taking and "'not the owner at an earlier or later date [who], receives the payment.'" *Id.* at 20–21, 78 S.Ct. at 1043–1044.

In substantiation of this point, the court is referred to Pa.Stat.Ann. tit. 68, §§ 81–88 (Purdon 1983) and *Burns v. Mitchell*, 252 Pa.Super. 257, 381 A.2d 487 (1977) (holding that title by adverse possession may mature where possession has been claimed under a mistaken belief of ownership; hostile intent not necessary). Indeed, the Pennsylvania Superior Court has stated that under Pennsylvania's law of prescriptive easements (which incorporates standards analogous to those applied in cases of adverse possession) a presumption of ownership arises from "an open use of * * the land of another without permission or objection for an uninterrupted period of 21 years." *Margoline v. Holefelder*, 420 Pa. 544, 548, 218 A.2d 227, 229 (1966). To overcome that presumption of ownership, it must be shown that the use of the land was under " 'some license, indulgence, or special contract inconsistent with a claim of right by the other party.' " *Brown v. McConnell*, 173 Pa.Super. 94, 96–97, 93 A.2d 896, 897 (1953).

Plaintiffs have made no such factual showing. Though they oppose the granting of summary judgment against them on the ground that there are material issues of fact in controversy, they offer no facts in support of this contention. They neither state that Propst's use of the land was permissive nor do they assert any other facts which, if established upon trial, would be sufficient to defeat the title of the Government's lessor. In short, the court has not been shown the existence of any dispute on material facts.

Plaintiffs make the further argument that, under Pennsylvania law, a right of way may not be acquired by adverse use where such way passes through unenclosed woodland. They rely upon Pa.Stat.Ann. tit. 68, § 411 (Purdon 1983) which reads as follows:

> No right of way shall be hereafter acquired by user where such way passes through unclosed woodland; but on clearing such woodland, the owner or owners thereof shall be at liberty to enclose the same, as if no such way had been used through the same before such clearing or enclosure * * *.

On the basis of this statute, plaintiffs contend that summary judgment may not be granted in the Government's favor on the road use issue since the record fails to establish whether or not the road passes through unenclosed woodland. Their argument at bottom then, is that by virtue of the statute, the Government's lessor would be legally disabled from acquiring title through adverse possession of a road that traverses unenclosed woodland.

The short answer to plaintiffs' argument is that the statute does not fit with the circumstances present in this case. The concern of the statute is limited to adverse *uses*, that is, with those personal, nonpossessory interests in land, more generally termed "easements", that arise by operation of law in favor of one who has maintained an uninterrupted, non-permissive use of the land of another for a limited purpose. *See* Restatement of Property § 450 (1944). The effect of the statute is to protect owners of unenclosed woodlands from any abridgment of the full and unrestricted use of their property by foreclosing recognition to easements by prescription in rights-of-way through such woodlands.

That is not what we are involved with here. Propst, the Government's lessor, did not deal with the subject property as a mere adverse user asserting only a limited and personal interest in that property. Rather, the action of executing and recording a lease of the property granting to another a right of access and use in return for an annual rental bespoke a claimed right of *exclusive* possession of the property—an exercise of dominion inconsistent with any claimed interest save that of full ownership. "The presence or absence of the privilege of exclusive occupation marks the dividing line between possessory and nonpossessory interests." Restatement of Property, Division V, Part I, introductory note at 2897 (1944). By contrast, "a person who has a way over land has only such control of the land as is necessary to enable

him to use his way and has no such control as to enable him to exclude others from making any use of the land which does not interfere with his." Restatement of Property § 450 comment b (1944).

It is clear then, that the issue in this case is one of title to property and not a right of passage over it. Under State law, a presumption of ownership is accorded to one whose possession of land has been open, continuous, exclusive, distinct, visible, notorious, and hostile for a period of 21 years. *Burns v. Mitchell, supra.* The Government's lessor, having leased the property continuously for more than the requisite prescriptive period, is entitled to the benefit of this presumption; plaintiffs have not shown otherwise. More than this need not be decided here in order to absolve the Government from any monetary liability to plaintiffs arising out of the access road use.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is granted, plaintiffs' motion for summary judgment is denied, and their complaint is to be dismissed.